■ LELAND G. JACKSON et al., Respondents, v NUTMEG TECHNOLOGIES, INC., Appellant. [842 NYS2d 588]—

---

Spain, J. Appeal from an order of the Supreme Court (Teresi, J.), entered October 4, 2006 in Albany County, which, inter alia, denied defendant's motion to preclude the testimony of plaintiffs' expert witnesses and for summary judgment dismissing the complaint.

Plaintiffs, employees of the Department of Taxation and Finance, commenced this personal injury action alleging injuries caused by occupational exposure to certain toxins in Building 8 of the Harriman State Office Campus complex in the City of Albany. Pursuant to a contract with the State of New York, defendant supplied diethylaminoethanol (hereinafter DEAE)—a chemical used to prevent corrosion—for use by the State in treating the heating and cooling system at the Harriman complex. It is undisputed that the heating system in Building 8 leaked some level of DEAE into the air; plaintiffs are alleging injury caused by this exposure.

In April 2006, defendant moved to preclude the testimony of plaintiffs' experts and for summary judgment dismissing the complaint based on plaintiffs' failure to demonstrate causation or a legally cognizable injury. Supreme Court denied the motion and, on defendant's appeal, we now affirm.*

"The admissibility and scope of [expert] testimony is addressed to the trial court's sound discretion and will not be disturbed on appeal absent an abuse of that discretion or an er-

---

* Although "an order which merely determines the admissibility of evidence" is not appealable (*Ferrara v Kearney*, 285 AD2d 890, 890 [2001]), here the order also denied defendant summary judgment, based not only on the admissibility of plaintiffs' expert testimony, but also on the finding that plaintiffs had stated a cognizable injury. Under these circumstances, we find that the appeal is properly before us (*see* CPLR 5701 [a] [2]; *Vaughan v Saint Francis Hosp.*, 29 AD3d 1133, 1135 [2006]).

ror of law" (*Hudson v Lansingburgh Cent. School Dist.*, 27 AD3d 1027, 1028-1029 [2006] [citations omitted]). Defendant argues that Supreme Court erred in failing to analyze and preclude plaintiffs' expert testimony under *Frye* (*see Frye v United States*, 293 F 1013 [1923]), which established that "[t]he introduction of novel scientific evidence calls for a determination of its reliability" (*Parker v Mobil Oil Corp.*, 7 NY3d 434, 446 [2006]). Thus, such novel evidence will be precluded unless the evidence is found to have " 'gained general acceptance' in its specified field" (*People v Wesley*, 83 NY2d 417, 422 [1994], quoting *Frye v United States, supra* at 1014; *see People v LeGrand*, 8 NY3d 449, 457 [2007]). Here, plaintiffs' experts relied upon epidemiological studies, which are by no means a novel methodology for demonstrating a causal relationship between a chemical compound and a set of symptoms or a disease (*see Nonnon v City of New York*, 32 AD3d 91, 104-105 [2006], *affd* 9 NY3d 825 [2007]). There being "no particular novel methodology at issue for which the Court needs to determine whether there is general acceptance . . . , the inquiry here is more akin to whether there is an appropriate foundation for the experts' opinions, rather than whether the opinions are admissible under *Frye*" (*Parker v Mobil Oil Corp., supra* at 447).

The foundational inquiry shifts away from the "general reliability concerns of *Frye* to the specific reliability of the procedures followed to generate the evidence proffered and whether they establish a foundation for the reception of the evidence at trial" (*People v Wesley, supra* at 429). Defendant argues that plaintiffs' expert testimony on causation lacks an adequate foundation because it does not follow the well-established principle in toxic tort cases "that an opinion on causation should set forth a plaintiff's exposure to a toxin, that the toxin is capable of causing the particular illness (general causation) and that [the] plaintiff was exposed to sufficient levels of the toxin to cause the illness (specific causation)" (*Parker v Mobil Oil Corp., supra* at 448). No dispute exists that plaintiffs were exposed to DEAE and that DEAE exposure is capable of causing illness, but defendant argues that the proffered expert testimony on causation is inadmissible because plaintiffs have not established that they were exposed to an established dangerous level of the toxin. The Court of Appeals has addressed the adequacy of foundation for expert testimony where, like here, a question existed "as to whether the methodologies employed by [plaintiffs'] experts lead to a reliable result—specifically, whether they provided a reliable causation opinion without using a dose-response relationship and without quantifying [plaintiffs'] exposure" (*id.* at 447).

In *Parker*, the Court of Appeals specifically rejected the argument that, to lay a foundation for expert testimony, toxic tort plaintiffs must always "quantify exposure levels precisely or use the dose-response relationship" (*id.* at 448) but, nevertheless, found foundation lacking because the plaintiff had failed to provide any "scientific expression" of his exposure level (*id.* at 449). Here, only marginal DEAE concentration levels were detected in the air and on surfaces following the leak, but plaintiffs offered testimony that such readings were inaccurate because they were taken days after the accident, that DEAE dissipates rapidly when airborne and that the surfaces had been cleaned immediately after the leak.

Further, plaintiffs' principal expert, David Orgel, was directly involved in the investigation of the potential health consequences of the incident giving rise to this action and coauthored a report based on the investigation and research which was published in a well-known, peer-reviewed medical journal. In his affirmation, Orgel opined that the manner in which the DEAE had been fed into the steam system prior to the leak caused concentrated levels of the toxin to be released. Orgel's published report is part of the record and details the epidemiological methods used to conduct the study and concludes, after comparing the facts related to the accident at issue here to those recorded in other studies, that a causal connection exists between plaintiffs' alleged symptoms and DEAE exposure in Building 8. Orgel cites a host of other articles and publications to corroborate his causation theory. Under these circumstances, we conclude that Supreme Court did not abuse its discretion in finding that plaintiffs have proffered sufficient foundational evidence to support the admissibility of their expert testimony at trial (*see People v Wesley, supra* at 425-429; *see Nonnon v City of New York, supra* at 104-105; *cf. Parker v Mobil Oil Corp., supra* at 447-449; *Saulpaugh v Krafte,* 5 AD3d 934, 936 [2004], *lv denied* 3 NY3d 610 [2004]). Defendant's additional objections to plaintiffs' expert testimony consist of factual disagreements which go to the weight to be accorded such evidence by the trier of fact, and not its admissibility (*see People v Wesley, supra* at 427; *Nonnon v City of New York, supra* at 107-108).

Given our conclusion that plaintiffs have submitted sufficient evidence to create an issue of fact on causation, defendant's summary judgment motion on that ground was properly denied. Likewise, we find unavailing defendant's assertion that summary judgment is appropriate because Multiple Chemical Sensitivity (hereinafter MCS), an injury alleged by many plaintiffs, is not cognizable under New York law. A review of the

complaint reveals that, in addition to MCS, plaintiffs allege a multitude of specific symptoms and ailments which they claim were caused by DEAE alone. Accordingly, plaintiffs have sufficiently stated actionable injuries and defendant has failed to establish a prima facie case for summary judgment.

Mercure, J.P., Mugglin, Rose and Kane, JJ., concur. Ordered that the order is affirmed, with costs.