Church of St. Francis De Sales v McGrath (2021 NY Slip Op 06902)





Church of St. Francis De Sales v McGrath


2021 NY Slip Op 06902


Decided on December 9, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 9, 2021

532624
[*1]The Church of St. Francis De Sales, Respondent,
v
William James McGrath, Also Known as James McGrath, et al., Appellants, et al., Defendants.

Calendar Date:October 20, 2021

Before:Egan Jr., J.P., Lynch, Clark, Aarons and Reynolds Fitzgerald, JJ.

Cook, Netter, Cloonan, Kurtz & Murphy, PC, Kingston (Eric M. Kurtz of counsel), for appellants.
Wapner, Koplovitz & Futerfas, PLLC, Kingston (Rod Futerfas of counsel), for respondent.



Lynch, J.
Appeal from a judgment of the Supreme Court (Fisher, J.), entered September 8, 2020 in Ulster County, which declared, among other things, that plaintiff has a valid, absolute and unencumbered title in fee to certain property.
On March 10, 1879, plaintiff — then known as the Catholic Church at Allaben — entered into a lease agreement with Nicholas Browne under which plaintiff acquired the right to use certain property in Ulster County (hereinafter the property) for church purposes. The term of the lease was for 99 years and was made in exchange for the nominal sum of one dollar.[FN1] The property was subsequently transferred to several different owners, including to individuals with the surname McGrath. For over 100 years, plaintiff maintained the subject property and held regular church services thereon.
In 2018, plaintiff commenced this action pursuant to RPAPL article 15 to quiet title to the property against potential heirs, claiming that it had acquired ownership through adverse possession. Of the known potential heirs, five answered the complaint (hereinafter collectively referred to as defendants). Upon motions for summary judgment by all parties, Supreme Court issued an order granting plaintiff's motion and denying defendants' cross motions, finding that plaintiff had acquired title to the property through adverse possession. A judgment was subsequently entered declaring, among other things, that plaintiff "has a valid[,] absolute and unencumbered title in fee" to the property. Defendants appeal.
Defendants contend that Supreme Court erred in concluding that plaintiff acquired title to the property through adverse possession because plaintiff did not make a clear and convincing showing that its use and possession was hostile. We disagree. "To demonstrate adverse possession of the parcel, plaintiff[] [bore the burden of showing] by clear and convincing evidence 'that the character of the possession [wa]s hostile and under a claim of right, actual, open and notorious, exclusive and continuous for the statutory period of 10 years'" (Wilcox v McLean, 90 AD3d 1363, 1364 [2011], quoting Ray v Beacon Hudson Mtn. Corp., 88 NY2d 154, 159 [1996]; see RPAPL former 501, 521; LS Mar., LLC v Acme of Saranac, LLC, 174 AD3d 1104, 1106 [2019]).[FN2] Where title is not founded upon a written instrument, the person claiming title by adverse possession may establish title "only to that portion of the disputed premises that was cultivated, improved or protected by a substantial enclosure" (Silipigno v F.R. Smith & Sons, Inc., 71 AD3d 1255, 1257 [2010] [internal quotation marks, brackets and citation omitted]; see RPAPL former 522 [1], [2]; Estate of Becker v Murtagh, 19 NY3d 75, 81 [2012]).
In general, where "permission can be implied from the beginning, adverse possession will not arise until there is a distinct assertion of a right hostile to the owner" (Klein v Lowy, 265 AD2d 380, 381 [1999] [internal quotation marks and citation omitted]; see Wilcox [*2]v McLean, 90 AD3d at 1365). However, where a landlord and tenant relationship "has existed between any persons[,] the possession of the tenant is deemed the possession of the landlord until the expiration of [10] years after the termination of the tenancy," at which time this presumption of nonadversity ceases (RPAPL former 531; see Gallea v Hess Realty Corp., 128 AD2d 274, 276-277 [1987], affd 71 NY2d 999 [1988]). A use of land is generally presumed to be hostile "when the other elements of adverse possession are shown" (McKeag v Finley, 93 AD3d 925, 926 [2012]; see Hulett v Korb, 192 AD3d 1424, 1425-1426 [2021]; Millington v Kenny & Dittrich Amherst, LLC, 124 AD3d 1108, 1109 [2015]), but may be rebutted by proof that the party claiming title by adverse possession "s[ought] permission for use [of the property] from the record owner" or had "a close and cooperative relationship [with] the record owner" (Estate of Becker v Murtagh, 19 NY3d at 82 [internal quotation marks and citation omitted]).
In support of its motion for summary judgment, plaintiff submitted certain deeds in the property's chain of title, along with the affidavits of Eugene Gormley and Michael Ruane — members of plaintiff's parish council. In their affidavits, dated June 11, 2020, Gormley and Ruane explained that plaintiff "has been in exclusive and continual operation" of the property "from at least 1902 to the present time," holding weekly church services thereon for over 100 years. Plaintiff was also "exclusively responsible for maintenance and improvements on the . . . property and building," which included regular lawnmowing since at least 2006, replacement of stained glass commemorative windows, placement of storm windows, and painting and reroofing the church building. These council members additionally revealed that plaintiff had, "at all relevant times," maintained property insurance and obtained religious tax exemptions for the premises. Gormley and Ruane were not aware of any instance in which defendants or their predecessors in interest made a claim of ownership to the property.
Based upon the foregoing, plaintiff established that it exclusively possessed the subject property for well beyond the 10-year adversity period, which commenced in 1988 upon expiration of the lease term in 1978 (see RPAPL former 531; Gallea v Hess Realty Corp., 128 AD2d at 276-277; Auto Gobbler Parts, Inc. v Serpico, 109 AD3d 943, 944 [2013]). The affidavits of Gormley and Ruane also established that, for at least 10 years after the presumption of nonadversity expired in 1988, plaintiff maintained property insurance, applied for and secured religious tax exemptions and undertook several renovation projects and repairs of the church building. In light of the foregoing, a presumption of hostility arose, and the burden shifted to defendants to rebut the presumption or demonstrate a triable issue of fact on one of the other elements of the adverse possession claim (see Estate of Becker [*3]v Murtagh, 19 NY3d at 81-82; 2 N. St. Corp. v Getty Saugerties Corp., 68 AD3d 1392, 1395 [2009], lv denied 14 NY3d 706 [2010]).[FN3]
In that respect, defendants submitted a deed, dated October 19, 1885, in which James McGrath conveyed to plaintiff an adjoining parcel of land for the purpose of operating a graveyard "for the Catholics of Shandaken and neighborhood," with a grave site reserved for the "McGrath" family.[FN4] Pointing to the 1885 deed, defendants averred that, "[h]ad the McGrath family wanted to provide [plaintiff] with fee simple ownership of the [property,] they would have done so." Defendants also proffered an affidavit from Elizabeth McGrath, an individual who claims to have obtained an ownership interest in the property upon her father's death in 1979. In her affidavit, McGrath claimed that she was "very familiar with [her] family's deep connection with the . . . church," maintaining that, prior to commencement of the action, she had never been made aware that plaintiff was alleging title to the property and asserting that "plaintiff was not possessing the premises under a hostile condition." She further maintained that neither defendants nor any of their predecessors in interest had "agree[d] to donate the property to . . . plaintiff" or "refuse[d] to permit plaintiff to continue to possess the premises under the terms of the original lease agreement."
On this record, we conclude that defendants failed to rebut the presumption of hostility or demonstrate any triable issue of fact on the other elements of the adverse possession claim. The presumption of nonadversity expired, by operation of RPAPL former 531, in 1988 (see Auto Gobbler Parts, Inc. v Serpico, 109 AD3d at 944), and Elizabeth McGrath's affidavit is simply too conclusory to establish a triable issue of fact as to whether plaintiff's continued possession for 10 years thereafter was permissive or resulted from a neighborly accommodation (see Estate of Becker v Murtagh, 19 NY3d at 83-84; compare Millington v Kenny & Dittrich Amherst, LLC, 124 AD3d at 1110). In that same vein, defendants' assertion that the lease was intended to be in perpetuity so long as plaintiff continued to operate a church on the property is not supported by the plain language of the lease agreement, which set forth a defined lease term of 99 years and which has not been shown to include a renewal clause conferring perpetual rights (see Farone v Mintzer, 133 AD2d 1009, 1010 [1987]; Genesee Conservation Found. v Oatka Fish & Game Club, 63 AD2d 1115, 1115 [1978]). Accordingly, we find that Supreme Court properly concluded that plaintiff acquired title to the property through adverse possession. Defendants' remaining contention that the complaint should alternatively be dismissed under CPLR 3211 (a) (7) lacks merit.
Egan Jr., J.P., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed, with costs.



Footnotes

Footnote 1: The record copy of this lease agreement is illegible, but the terms thereof are undisputed.

Footnote 2: Although this action was commenced after the effective date of the 2008 amendments to RPAPL article 15, those amendments are inapplicable here since plaintiff claims that its title to the disputed property vested in 1998 (see Bergmann v Spallane, 129 AD3d 1193, 1194 n 2 [2015]; Hogan v Kelly, 86 AD3d 590, 592 [2011]; Hammond v Baker, 81 AD3d 1288, 1290 [2011]).

Footnote 3: Defendants assert that plaintiff's cultivation of the land was merely incidental to its authorized use as a church. As defendants raised this argument for the first time in their reply brief on appeal, it is not properly before us (see Reed v New York State Elec. & Gas Corp., 183 AD3d 1207, 1209 [2020]). In any event, plaintiff demonstrated that its cultivation of the property, including making a major addition to the church and replacing stained glass windows, was more than incidental (see Goss v Trombly, 39 AD3d 1128, 1130 [2007]).

Footnote 4: The record copy of this deed is difficult to read, but the terms thereof are not in dispute.